UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
MICHAEL BROWN,                              )
                                            )
              Petitioner,                   )
                                            )
v.                                          )          Civil Action No. 12-12000-RGS
                                            )
GARY RODEN,                                 )
                                            )
              Respondent.                   )
_____)

REPORT AND RECOMMENDATIONS ON
RESPONDENT'S MOTION TO DISMISS

January 27, 2014

SOROKIN, C.M.J.

Pending is Respondent Gary Roden's Motion to Dismiss Petitioner Michael Brown's

Petition for Writ of Habeas Corpus.  Doc. No. 11.  For the following reasons, I RECOMMEND

that the Court ALLOW Respondent's motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

        A.      Factual Background

        The following factual information, which is recited in Commonwealth v. Brown, No. 11-

P-153, 82 Mass. App. Ct. 1108, 2012 WL 3052904 (July 27, 2012) (unpublished table decision),

is presumed to be correct.  See 28 U.S.C. § 2254(e)(1); Gunter v. Maloney, 291 F.3d 74, 76 (1st

Cir. 2002).[1]

        On November 9, 2006, a Superior Court jury found the defendant guilty of
        (1) kidnapping, (2) aggravated rape, (3) assault by means of a dangerous weapon, (4)

_____
        [1] Further facts will be adduced as appropriate to the discussion of Brown's claims, infra.

assault and battery, and (5) armed robbery.  The charged conduct occurred on May 6, 1990.  The victim was a woman whom we designate as LP. The jury received the following evidence.  LP testified that on May 5, 1990, shortly after midnight, she drove to a party at the Caribbean Culture Club on Blue Hill Avenue in the Dorchester section of Boston.  She parked her car on nearby Callender Street and was walking toward the club.  A man seized her by the neck, pointed a gun at her, and led her to the back of a nearby house.  He took her jewelry and money.  He blindfolded her, removed her pants, and had forcible vaginal intercourse with her. He left her on the ground.  She did observe him but did not recognize him from any prior contact or observation.

LP testified that she got up, dressed, and went to the club.  She found her boyfriend (later her husband), MB.  She told him of the attack. They both then reported the crime to a nearby police officer. A friend of LP, Sonia Webb, then drove her to Brigham & Women's Hospital.

Medical personnel at the hospital performed a rape examination and created a rape kit.  The examination identified semen on LP's clothing.

Thirteen years later, in 2003, a project testing DNA in unsolved cases against national databases produced a match of the DNA from LP's clothing with the defendant.  Confirmation of the match resulted from a sample taken from the defendant in 2004.  Police arrested the defendant in New York City in April of 2004, where a New York City detective interrogated him.

At trial the Commonwealth called nine witnesses (MB, five employees of the Boston police department, one employee of the Brigham & Women's Hospital, and one expert on the physical effects of sexual assault); the Commonwealth arranged for the reading of the New York City detective's testimony from an earlier hearing into the trial record.  The Commonwealth listed, but did not call, Sonia Webb as a witness.  The defendant did not call any witnesses.  He had listed a woman named Hopa Bailey as a potential witness.  She did not appear in court on the day on which the defendant would have called her.  Defense counsel did not request a continuance or a capias for her.

Brown, 2012 WL 3052904, at *1.[2]

B.     Procedural History

After conviction, Brown appealed, challenging the sufficiency of the evidence.  The

_____

[2]The Massachusetts Appeals Court, in this portion of its opinion, appears to omit the victim, whom it refers to as LP, from its list of witnesses who testified at trial.  The omission appears to be inadvertent and, in any event, does not affect the court's analysis, as the court refers to LP's trial testimony elsewhere in its opinion.  See, e.g., Brown, 2012 WL 3052904, at *1, *4.

Massachusetts Appeals Court (MAC) affirmed the conviction in an unpublished decision.

Commonwealth v. Brown, No. 08-P-809, 73 Mass. App. Ct. 1128,  2009 WL 723051 (Mar. 20,

2009)  (unpublished table decision).  In 2009, the trial judge denied Brown's motion to revoke

and revise his sentence.  Doc. No. 12-1 at 15;[3] Brown, 2012 WL 3052904, at *1.  In 2010,

Brown filed a motion for a new trial, which the trial judge also denied.  Doc. No. 12-1 at 15.

Brown did not seek appellate review of the denial of his motion for a new trial.  Id. at 15.

        Still in 2010, Brown moved for reconsideration of his motion for a new trial, for

appointment of counsel, and for an evidentiary hearing, challenging his conviction on numerous

bases.  Id.; Doc. No. 12-9.  First, Brown asserted that trial counsel was ineffective for (1) failing

to pursue a consent defense at trial; (2) failing to investigate the consent defense; and, (3) failing

to address Brown's hearing impairment.  Doc. No. 12-9 at 30-45.  Second, Brown asserted that

appellate counsel was ineffective in failing to raise the ineffective assistance of trial counsel

claims described supra. Id. at 46-50.  Third, Brown alleged that the trial court improperly denied

him missing witness instructions, premised on both his own counsel's and the prosecutor's

failure to call an "alibi" witness and a witness who gave testimony potentially favorable to

Brown before the grand jury.  Id. at 51-55.  Finally, Brown argued that the victim, LP, presented

perjured testimony to the jury.  Id. at 55-62.

        On December 9, 2010, the trial judge denied the motions, finding that the ineffective

assistance of trial counsel claims, which had not been raised in Brown's appeal, did not raise a

substantial risk of a miscarriage of justice, and, in any event, trial counsel's conduct was not

---

        [3] References to page numbers in citations to documents appearing on the docket in this
matter are to the pages as printed in the ECF header.

ineffective.  Doc. No. 12-12 at 6-11.  The judge also found appellate counsel not to be ineffective

and went on to reject Brown's other claims as meritless.  Id. at 11-14.  On July 27, 2012, the

MAC affirmed in the opinion quoted, supra.  Brown, 2012 WL 3052904, at *1.  On August 21,

2012, the MAC denied Brown's petition for rehearing and, three days later, on August 24th,

issued a rescript of that decision to the trial court.  Doc. No. 12-17 at 3.

      The Massachusetts Rules of Appellate Procedure provide that "[w]ithin twenty days after

the date of the rescript [August 24, 2012 in this case] of the Appeals Court any party to the

appeal may file an application for leave to obtain further appellate review of the case by the full

Supreme Judicial Court."  Mass. R. App. P. 27.1(a).  A party must file "[o]ne copy of the

application . . . in the office of the clerk of the Appeals Court."  Id. at 27.1(d).  The rules also

provide that "[a]n original and seventeen copies of the application . . . shall be filed in the office

of the clerk of the full Supreme Judicial Court."  Id.

      Brown, proceeding pro se, made a timely filing of an application for leave to obtain

further appellate review (ALOFAR) with the Appeals Court on August 30, 2012.  See Doc. No.

12-17 at 3.  The Supreme Judicial Court (SJC), however, has no record of ever receiving

Brown's ALOFAR filing, according to the Respondent's memorandum, Doc. No. 12 at 4 n.1,

and Brown has not cited anything to the contrary.

      The certificate of service appended to the ALOFAR Brown filed with the Appeals Court

states:

CERTIFICATE OF SERVICE

      I hereby certify that on this 18th, day of September 2012, a copy of the
defendant/appellant's Request for Leave to obtain Further Appellate Review;
Memorandum of Law in support, along with certificate of service has being serve [sic]
via first-class mail, postage to Joseph Stanton, Clerk of the Appeals Court, One

4

Pemberton Square, Boston Mass. 02108, and one copy to John P. Zanini, ADA, One
Bulfinch Place, Boston, Massachusetts 02114.

Doc. No. 12-18 at 31.[4]  Other records confirm the assertions of service on the Appeals Court and

the Assistant District Attorney (ADA).  Doc. No. 12-17 at 3; Doc. No. 12-18 at 2.

On December 17, 2012, the ADA Paul Linn wrote a letter addressed to the Clerk of the

SJC and the Clerk of the MAC apprising them both that the ALOFAR he had received, and

which "was received by the Appeals Court in August, does not appear to have been entered in

the Supreme Judicial Court."  Doc. No. 12-18 at 2.  He went on to state that he had "no

explanation for this discrepancy, but I thought I should bring it to your attention."  Id.

Brown does contend that on September 18, 2012, he submitted his "Memorandum of

Law in support of his ("FAR") Further Appellate Review to the SJC's clerk Susan Mellen, using

the prison institutional mailing system."  Doc. No. 19 at 6.  He also contends that he sent copies

to the MAC and the ADA, Doc. No. 19 at 6 (citing Doc. No. 19-1 at 82-83, Attach. 23-26[5]).

Brown also argues that on October 5, 2012, he wrote to Susan Mellen stating he had not heard

from the court and requesting docket sheets.  Doc. No. 19 at 7.  He has submitted mailing charge

forms that reflect attempted mailings to the Clerk of the MAC on August 27th, and to the Clerks

of the SJC and MAC, as well as the ADA, on September 18th.  Doc. No. 19-1 at 82, Attach. 23-

---

[4]  While Brown's certificate of service dates his service and filing with the Appeals Court
on September 18, 2012, a date past the twenty-day deadline, the docket of the Appeals Court
reflects filing of the ALOFAR on August 30, 2012.  The parties have not explained this
discrepancy.

[5]Brown has appended certain documents to his opposition to the instant motion, which he
denominates using "Attach." followed by a number.  Doc. 19 at 1 n.1.  Because there are
occasions where separately numbered attachments appear on the same page, for clarity and ease
of reference, citation is to both the pages as printed in the ECF header and the attachment
number as denominated by Brown.

25.  Each of these forms bears a "PAID" stamp dated January 2, 2013 and a handwritten notation

of "freeze" or "frozen" followed by a date.  Id.  Brown's Inmate Transaction Report lists postage

charges on January 2, 2013.  Doc. No. 19-1 at 83.

II.     EXHAUSTION

        The Respondent moves pursuant to Fed. R. Civ. P. 12(c) to dismiss the Petition because:

(1) Brown failed to exhaust his available state court remedies; (2) a stay to permit Brown to

exhaust is not warranted where it is procedurally barred and no exceptional circumstances

warrant a stay; and (3) even if the merits were reached, the claims are meritless.  Doc. No. 12 at

1, 5-22

        A.      Standard of Review

        28 U.S.C. § 2254 requires that a habeas petitioner exhaust remedies in state court,

providing, in relevant part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody
>        pursuant to the judgment of a State court shall not be granted unless it appears
>        that--
>        (A) the applicant has exhausted the remedies available in the courts of the
>            State; or
>        (B)(I) there is an absence of available State corrective process; or
>            (ii) circumstances exist that render such process ineffective to protect the
>                 rights of the applicant.
>     .   .   .
>
>  (c) An applicant shall not be deemed to have exhausted the remedies available in the
>      courts of the State, within the meaning of this section, if he has the right under
>      the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)-(c).

        The exhaustion requirement provides the State with the "'opportunity to pass upon and

correct' alleged violations of its prisoners' federal rights."  Baldwin v. Reese, 541 U.S. 27, 29

(2004) (quoting <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (per curiam)).  A habeas petitioner

bears the "heavy  burden" of demonstrating the fulfillment of the exhaustion requirement.

<u>Barresi v. Maloney</u>, 296 F.3d 48, 51 (1st Cir. 2002).  In order to meet this burden, Brown had to

file an ALOFAR with the SJC.  <u>See</u> <u>Josselyn v. Dennehy</u>, 475 F.3d 1, 3 (1st Cir. 2007).

     B.     <u>Petitioner's Attempts to Exhaust</u>

Plainly, the SJC never considered an ALOFAR petition from Brown.  The only question

is whether Brown should be excepted from the requirement of exhausting his claims in state

court due to the circumstances of his case.  <u>See</u> 28 U.S.C. § 2254(b)(1)(B) (allowing courts to

hear and remedy unexhausted claims in certain limited circumstances).  In this case, whether

Brown fits within such an exception turns on the resolution of certain factual questions not

considered by the state court and not resolved by the record presently before the Court:

specifically, whether Brown deposited the ALOFAR petition in the prison mailing system on

time and in compliance with any permissible and applicable rules.  Respondent suggests that the

"Court may bypass the exhaustion requirement and deny a petitioner's claims where the claims

fail on the merits."  Doc. No. 12 at 9 (citing 28 U.S.C. § 2254(b)(2)); <u>see</u> <u>Coningford v. Rhode</u>

<u>Island</u>, 640 F.3d 478, 483 (1st Cir. 2011) ("where . . . a habeas petitioner's unexhausted claim is

patently without merit, the AEDPA allows a federal court, in the interests of judicial economy, to

dispose of that claim once and for all.").  The parties have briefed the merits, and the

Respondent's suggestion is therefore reasonable.

III.     <u>BROWN'S MERITS CLAIMS</u>

Brown advances the following claims challenging his conviction: (1) ineffective

assistance of trial counsel arising from counsel's failure to investigate, prepare, or mount a

consent defense, failure to present favorable evidence in the form of two witnesses, failure to object to prosecutorial misconduct in the summation, and erroneous advice not to testify; (2) the Commonwealth's chief witness committed perjury; (3) the trial judge abused her discretion by denying Brown's motion for a new trial without a hearing; and (4) the trial judge failed to give a missing witness instruction.

    A.    <u>Legal Standards</u>

Federal district courts may not grant a writ of habeas corpus unless they find that the state court's adjudication of the petitioner's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Pursuant to this provision, state court decisions merit substantial deference. As the Supreme Court repeatedly has emphasized, such deference results in a federal habeas corpus standard that is "difficult to meet," with the petitioner carrying a heavy burden of proof. <u>Harrington v. Richter</u>, 131 S. Ct. 770, 786 (2011); <u>accord</u> <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1398 (2011); <u>see</u> <u>Burt v. Titlow</u>, 134 S. Ct. 10, 15-16 (2013) (emphasizing "formidable barrier" faced by federal habeas petitioner where claims already were adjudicated in state court, and limiting relief to cases of "extreme malfunctio[n]" by a state criminal justice system). If a state court's decision "was reasonable, it cannot be disturbed" on habeas review. <u>Hardy v. Cross</u>, 132 S. Ct. 490, 495 (2011) (per curiam). When applying this strict standard, I must presume that the state court's factual findings are correct, unless the petitioner has rebutted that presumption with clear and convincing evidence. § 2254(e)(1);

Miller-El v. Cockrell, 537 U.S. 322, 340-41 (2003).

      B.      Ineffective Assistance of Counsel

Petitioner raises several ineffective assistance of counsel claims.  The same legal standard applies to each. Clearly established federal law governing claims of counsel ineffectiveness is set forth in the familiar two-part test of Strickland v. Washington, 466 U.S. 668 (1984).  "First, the defendant must show counsel's performance was deficient," which requires showing "errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."  Strickland, 466 U.S. at 687.  "Second, the defendant must show the deficient performance prejudiced the defense."  Id.  "Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."  Id.  Massachusetts state courts apply an equivalent test for ineffectiveness claims.  See Lynch v. Ficco, 438 F.3d 35, 48 (1st Cir. 2006) (calling the state standard in Commonwealth v. Saferian, 315 N.E.2d 878 (Mass. 1974), the "functional equivalent" of the Strickland test).

Review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas."  Yarborough v. Gentry, 540 U.S. 1, 6 (2003); accord Titlow, 134 S. Ct. at 14; see Pinholster, 131 S. Ct. at 1403 ("We take a 'highly deferential' look at counsel's performance through the 'deferential lens of § 2254(d).'" (internal citations omitted)). Accordingly, if the state court addressed counsel's effectiveness, a petitioner must show the state court's decision was objectively unreasonable.  Woodford v. Visciotti, 537 U.S. 19, 25 (2002). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly."  Bell v. Cone, 535 U.S. 685, 699 (2002); see

also <u>Richter</u>, 131 S. Ct. at 778 ("A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself."). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Richter</u>, 131 S. Ct. at 788. A habeas petitioner must, therefore, "do more than show that he would have satisfied <u>Strickland</u>'s test if his claim were being analyzed in the first instance." <u>Bell</u>, 535 U.S. at 698-99.

**1.    Counsel's Alleged Failure to Investigate, Prepare, and Mount a Consent Defense and Present Favorable Evidence**

Brown contends that trial counsel failed to effectively investigate, prepare, and mount a consent defense and present favorable evidence. Specifically, Brown claims his trial counsel was aware of two witnesses, Sonia Webb and Hopa Bailey, who purportedly would testify to a romantic relationship between Brown and the victim, but that counsel failed to call these witnesses. In addition, Brown claims he wanted to testify and would have testified to his relationship with the victim, his decision to end their relationship that night after they had consensual intercourse, and her anger at his decision. Insofar as his claim rests upon his own testimony, it fails due to Brown's knowing and voluntary decision not to testify. <u>See</u> <u>infra</u> at 13-15.

As to the other witnesses, the trial judge found that Bailey was on defense counsel's witness list and was summonsed for trial. Doc. No. 12-12 at 3, 6. During trial, the prosecuting attorney informed defense counsel of jailhouse phone calls between Bailey and Brown during which they "repeatedly engaged in phone sex" according to the prosecuting attorney's affidavit. <u>Id.</u> at 6. The trial transcript reflects that, although Bailey was present in court on the third day of

10

trial, Trial Tr. Nov. 7, 2006, p. 167, she was not present the following day—when she was to

testify—after she was informed of the jailhouse phone calls,  Trial Tr. Nov. 8, 2006, pp. 4-5.

Defense counsel attempted to contact her, but received no response and did not seek a

continuance or a capias for her.  Doc. No. 12-12 at 6.  In a letter to Brown, trial counsel

explained that, although he considered calling Bailey as part of a consent defense, he made a

judgment not to pursue Bailey's appearance as a result of the phone calls, her disappearance

from the courthouse, facts in evidence that ran contrary to a consent theory, and a more viable

defense attacking the chain of custody of the DNA evidence .  Doc. No. 19-1 at 64.

  The only evidence before the Court describing Bailey's anticipated testimony comes

from Brown's affidavit.  There is neither an affidavit from counsel nor from Bailey.  In addition,

the record does not contain the affidavit Brown reports Bailey gave to Brown's trial counsel.

The MAC found that the "motion judge justifiably discredited the defendant's 'self-serving

affidavit'" and, accordingly, rejected Brown's claim, ruling that it "lacked any affidavit support

from the attorney and any other corroborating evidence or information whatsoever."  Brown,

2012 WL 3052904, at *3.

  In the context of a claim of ineffective assistance of counsel, the burden is on the

defendant challenging the adequacy of his trial counsel.  In these circumstances, where the only

affidavit presented was Brown's own and his trial counsel made a knowing and intelligent choice

to eschew Bailey's appearance and a consent defense in favor of a different theory of defense,

the state court's decision that Brown failed to meet his burden of substantiating his claim was

neither "an unreasonable application of[] clearly established Federal law" or "an unreasonable

determination of the facts."  See  28 U.S.C. § 2254(d).

Webb was originally listed as a prosecution witness but was not called by the Commonwealth. She was among the first to encounter the victim after the rape. She also accompanied the victim to the hospital. Insofar as Brown asserts she would testify to a prior relationship between the victim and Brown, the claim fails for the same reasons as the claim concerning Bailey.

Just as Brown fails to substantiate his claims of his trial counsel's deficient performance for not calling the two witnesses nor prejudice springing therefrom, any other claim of ineffective assistance related to a consent defense—whose core would be the testimony of witnesses attesting to an ongoing sexual relationship between Brown and the victim—must also fail, and the denial of those claims does not warrant relief under § 2254(d).

**2.      Counsel's Alleged Failure to Object to Prosecutorial Misconduct in the Summation**

Brown argues ineffective assistance of counsel arising out of trial counsel's failure to object to prosecutorial misconduct in the form of vouching for one of the Commonwealth's witnesses during closing argument. At times in his state court briefs, Brown styled the alleged vouching as a violation of due process.[6] In the ALOFAR received by the MAC, Brown only describes the vouching as violating his "right to a fair trial," Doc. No. 12-18 at 24-25, and does

---

[6]Brown does not present a violation of due process resulting from improper vouching as a ground for relief in his petition, and, therefore, that claim is not before the Court. Even if Brown had raised such a claim here, it would be without merit. Read in context, the statements Brown takes issue with—statements to the effect that the victim is credible—did not serve to inject the personal opinion of the prosecutor as to the credibility of the witness, but rather were conclusions that followed the prosecutor's enumeration of reasons why the jury should conclude that the victim was, in fact, a credible witness. See Trial Tr. Nov. 8, 2006, pp. 31-34; United States v. Rodriguez, 215 F.3d 110, 123 (1st Cir. 2000) ("an argument that does no more than assert reasons why a witness ought to be accepted as truthful by the jury is not improper witness vouching").

not raise the issue when discussing what he alleges to be his trial counsel's ineffective

assistance, <u>Id.</u> at 25-27.  Brown was required to include the claim in his ALOFAR in order to

exhaust the claim, <u>see</u> <u>Clements v. Maloney</u>, 485 F.3d 158, 170 (1st Cir. 2007) (citing <u>Mele v.

Fitchburg Dist. Ct.</u>, 850 F.2d 817, 820-23 (1st Cir. 1988)), and presenting the factual

underpinning of a claim, without including the legal basis for that claim does not satisfy the

exhaustion requirement, <u>see</u> <u>Adelson v. DiPaola</u>, 131 F.3d 259, 262 (1st Cir. 1997).  Thus, this

omission is fatal to this portion of his ineffective assistance of counsel claim, as it renders the

claim unexhausted.

Accordingly, I RECOMMEND that the Court give Brown a chance to dismiss this

unexhausted theory of ineffective assistance of counsel.  If Brown elects dismissal of that one

theory, then I RECOMMEND that the Court resolve the rest of his petition on the merits as set

forth herein.  If Brown declines dismissal, then I RECOMMEND that the Court dismiss the

entire petition as a mixed petition for which there is no basis for a stay.[7]

### 3.     Trial Counsel's alleged Ineffective Assistance Regarding Defendant's Decision To Testify or Not

Third, Brown argues ineffective assistance arising out of trial counsel's advice to Brown

that he should not testify at trial.  Brown argues that it was his intention to testify in support of

his contention that he and LP had a consensual sexual relationship and his trial counsel wrongly

advised him not to testify.  The Appeals Court rejected this claim ruling:

---

[7]Pursuant to the standards set forth in <u>Rhines v. Weber</u>, 544 U.S. 269 (2005), a stay of a federal habeas proceeding to allow a petitioner to return to state court to exhaust a claim should be allowed only where a petitioner can demonstrate good cause for his failure to exhaust.  <u>See</u> <u>Josselyn</u>, 475 F.3d at 4 (quoting <u>Rhines</u>, 544 U.S. at 278).  Here, Brown has made no showing of cause for his failure to exhaust his claim before the MAC.

At the conclusion of the Commonwealth's case, the trial judge thoroughly examined the defendant upon the subject of his decision whether to testify or to remain silent.  Her examination of him shows conclusively that he made the decision to testify intelligently and freely. . . . This contention [that counsel pressured Brown or prevented him from testifying] is thoroughly specious.

Brown, 2012 WL 3052904, at *3.

The Appeals Court, as did the trial court, relied upon the following colloquy that

occurred at the conclusion of the Commonwealth's case.

THE COURT: "Mr. Brown, we talked briefly yesterday about the decision that you have to make, which is probably the most difficult decision any defendant facing criminal charges has to make ."
THE DEFENDANT: "Yes, sir."
THE COURT: "And that is whether or not to testify. And you understand that because of the presumption of innocence, you are not required to testify and you are fully within your rights to say to the Commonwealth, 'Prove it.' You understand that?"
THE DEFENDANT: "Yes, sir."
THE COURT: "And you also understand that if you should choose to do so, you also have the option of presenting evidence in your defense, and included in that would be your own testimony? You understand that?"
THE DEFENDANT: "Yes, sir."
THE COURT: "Now, I know you've had time to talk to [your attorney]. Have you had enough time to discuss this particular issue?"
THE DEFENDANT: "Yes, sir."
THE COURT: "And are you satisfied that you've gotten fair and competent advice from [your attorney] on whether or not you should testify?"
THE DEFENDANT: "Yes, sir."
THE COURT: "And have you made that decision?"
THE DEFENDANT: "Yes, your Honor."
THE COURT: "And what is your decision going to be?"
THE DEFENDANT: "Not to testify."
THE COURT: "All right. And has anyone threatened you or coerced you or made any promises which induced you to say I won't testify?"
The defendant: "No, your Honor."
THE COURT: "And is it a free act? Have you decided not to testify freely, of your own freewill?"
THE DEFENDANT: "Yes, sir."
THE COURT: "And are you satisfied that this is in your best interest at this time?"
THE DEFENDANT: "Yes, sir."

Brown, 2012 WL 3052904, app. I (citing to trial transcript).

As with his other claims, Brown relies, chiefly, on his own affidavit and various letters of counsel to support the claim that, given the potential consent defense and notwithstanding the colloquy, advising Brown not to testify constituted ineffective assistance of counsel.  Insofar as Brown is alleging that trial counsel placed undue pressure on him not to testify, that contention is undermined by the colloquy and elsewhere in the record,[8] and the state court's ruling on that issue was far from unreasonable.  Insofar as Brown is alleging ineffective assistance of counsel for not presenting Brown's testimony at trial in support of a consent defense, such claim fails for the same reasons as his claims regarding the failure to call the other two witnesses.

C.    The Victim's Alleged Perjury

Brown asserts a violation of his rights arising out of the victim's alleged perjurious testimony generally and specifically in denying that she knew him.  As evidence of her perjury, Brown cites to (a) his lawyer's letter reporting that Bailey told the lawyer that she, Bailey, knew the victim and Brown were acquainted, Doc. No. 19-1 at 64; (b) the testimony of MB during voir dire where he states that he, MB, had seen Brown before, Trial Tr. Nov. 6, 2006,  pp. 116-118; (c) Brown's post-trial affidavit in which he avers he knew the victim, Doc. No. 23 ¶¶ 7-22; and (d) various apparent inconsistencies between LP's grand jury and trial testimony and other testimony offered in the case, see Doc. No. 1 at 13-14.  The Appeals Court rejected this argument, stating: "This contention is futile. Any discrepancies in the testimony of LP sixteen years after a traumatic experience belong to the jury's assessment of credibility.  The jury

---

[8]It is worth noting that the trial court's colloquy with Brown appears to have been the result of a request by Brown's trial counsel, who wanted to ensure that Brown understood that the decision of whether to testify rested with him and not with counsel.  Trial Tr. Nov. 8, 2006, pp. 7-8.

rendered its verdict." <u>Brown</u>, 2012 WL 3052904, at *4.

Credibility determinations such as those made by the Appeals Court as well as the motion judge, <u>id.</u>; Doc. No. 12-12 at 13-14, are factual determinations entitled to the presumption that they are correct.  <u>See</u> 28 U.S.C. § 2254(e)(1).  Brown bears the burden by clear and convincing evidence to overcome the presumption.  <u>See id.</u>  Again, the limited evidence and information he cites fails to meet his burden.  The MAC's ruling in this regard was neither contrary to, nor involved an unreasonable application of, clearly established federal law.  <u>See</u> § 2254(d).

> D.   <u>The Trial Judge's Alleged Abuse of Discretion for Denying an Evidentiary Hearing</u>

Brown claims a violation of his "due process right to a fair trial" arising out of the trial judge's failure to convene an evidentiary hearing in response to his motion for a new trial.  Doc. No. 1 at 7. The Appeals Court ruled that "the meritless quality of the foregoing contentions thoroughly justifies the discretionary determination of the trial-and-motion judge to deny an evidentiary hearing and the appointment of counsel."  <u>Brown</u>, 2012 WL 3052904, at *4.

The trial judge, in rejecting Brown's request for an evidentiary hearing, cited Rule 30(c)(3) of the Massachusetts Rules of Criminal Procedure, which allows a judge to dispose of a motion for a new trial without an evidentiary hearing "if no substantial issue is raised by the motion or affidavits."  Doc. No. 12-12 at 4; Mass. R. Crim. P. 30(c)(3).  The trial judge went on to find that "[t]he only new evidence that the defendant presented with his motion is his own affidavit. This court finds that this self-serving affidavit is not credible.  As such this court denies defendant's request for an evidentiary hearing."  Doc. No. 12-12 at 14 (citations omitted).

As a preliminary matter, a claim that the denial of an evidentiary hearing did not comport with state law is not cognizable in a federal habeas proceeding.  <u>Coningford</u>, 640 F.3d at 484 n.4

("an error of state law, without more, is not enough to warrant federal habeas relief.").  In order

to merit relief before this Court, "the state court's application of state law must be 'so arbitrary

or capricious as to constitute an independent due process . . . violation.'"  Id. at 484 (quoting

Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).  Brown has not demonstrated that the state court

ruling as to the denial of an evidentiary hearing was "so arbitrary or capricious" as to constitute

an independent due process violation.

> E.      The Trial Judge's Failure to Give a Missing Witness Instruction

Brown claims a violation of his federal rights arising from the trial judge's failure to give

a missing witness instruction to the jury.  Brown asserts he was entitled to the instruction with

respect to both Sonia Webb, the Commonwealth's uncalled witness, and Hopa Bailey, his

witness.  The Appeals Court rejected this claim.  As to Ms. Webb, the court held that

> A party is entitled to the missing witness instruction if that absent witness naturally or
> predictably would have provided some testimony of "distinctive importance" to the
> position of the opposing party.  In this instance, Sonia Webb had no evidence of "distinct
> importance" additional to the information provided by MB and the employee of the
> Brigham & Women's Hospital.  Her testimony would have been cumulative.

Brown, 2012 WL 3052904, at *3 (citations omitted).

As to Ms. Bailey, the Appeals Court held that any claim for a missing witness instruction

was "baseless" due to the fact that Ms. Bailey was Brown's own witness.  Brown, 2012 WL

3052904, at *4.  The court stated that Brown "cannot contend rationally that the jury should

draw some inference favorable to him because his own witness failed to appear."  Id.

Brown's federal claim is without merit.  As with his claim for denial of an evidentiary

hearing, to the extent Brown complains of a violation of state law regarding the reading of a

missing witness instruction, that state law claim is not cognizable before this Court.  See Garuti

v. Roden, 733 F.3d 18, 24 (1st Cir. 2013) (noting that an erroneous ruling on an issue of state evidentiary law will not provide a ground for habeas relief unless it is so flagrant as to constitute an independent due process violation).  In order for a due process claim to lie, Brown would have to show that the state court's refusal to issue a missing witness instruction was not only erroneous, but an error that so infected the proceedings that the trial could no longer be said to be fundamentally fair.  See Coningford, 640 F.3d at 484.

Brown can make no showing that comes close to establishing a due process violation here as to either witness.  Both the Appeals Court and the trial judge found that Webb's testimony would have been largely duplicative testimony of other witnesses.  Brown, 2012 WL 3052904, at *3; Doc. No. 12-12 at 12-13.  Brown has not presented any affidavits, other than his own, sufficient to disturb that finding or show that the failure to give the missing witness instruction resulted in the magnitude of prejudice necessary to make out a due process violation.

Brown's argument is even weaker as to Bailey, who, as Brown's own supportive witness, left the Courthouse after learning she faced cross-examination regarding her phone sex with the defendant.  As the noted by the MAC, it strains common sense to understand how Brown could be entitled to an instruction that "the jury should draw some inference favorable to him because his own witness failed to appear."  Brown, 2012 WL 3052904, at *4.  In these circumstances, Brown can not satisfy the heavy burden to establish a due process violation.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, I respectfully RECOMMEND that Brown be given the

opportunity to dismiss his unexhausted theory of ineffective assistance of counsel as to the

failure to object to the prosecutorial misconduct.  If Brown elects dismissal of that one theory

then I RECOMMEND that the Court resolve the rest of his petition by DENYING the remaining

claims on the merits as set forth above.  If Brown declines dismissal, then I RECOMMEND that

the Court dismiss the entire petition as a mixed petition for which there is no basis for a stay.[9]


       /s/ Leo T. Sorokin

Leo T. Sorokin

Chief U.S. Magistrate Judge

---

[9]The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation.  The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  <u>See</u> Fed. R. Civ. P. 72; 28 U.S.C. § 636(b); Habeas Corpus Rule 8(b).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to file timely objections will preclude further appellate review of the District Court's order based on this Report and Recommendation.  <u>See</u> <u>Keating v. Sec'y of Health & Human Servs.</u>, 848 F.2d 271 (1st Cir. 1988); <u>United States v. Valencia-Copete</u>, 792 F.2d 4 (1st Cir. 1986); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).